**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**[36] EDWIN ORTIZ-FIGUEROA,**

Defendant.

Criminal No. 95-029 (ADC) (MBA)

**<u>REPORT AND RECOMMENDATION</u>**

Before the Court is Edwin Ortiz-Figueroa's renewed motion for 18 U.S.C. § 3582(c)(1)(A) relief (commonly known as a motion for compassionate release). (ECF No. 4216). Ortiz-Figueroa argues that he is entitled to compassionate release because he has a number of severe health conditions, is at a high risk of death from COVID-19, has shown remorse and rehabilitation, and at the time of filing, was over 65 years of age and served more than 23 years of his lifetime sentence. (*Id.* at 3-6). He further claims that the 18 U.S.C. § 3553(a) factors favor his release. (*Id.* at 6-8). The government opposed, arguing that Ortiz-Figueroa fails to present any extraordinary or compelling circumstance warranting relief, let alone establish that he is not a danger to the community under § 3553(a). (ECF No. 4218). U.S. District Judge Aida M. Delgado-Colón referred the motion to me for a Report and Recommendation. (ECF No. 4323). For the reasons set forth below, I recommend the motion for compassionate release be **DENIED**.

**BACKGROUND**

On June 26, 1997, Ortiz-Figueroa was charged in a third superseding indictment as to four counts: conspiracy to possess with intent to distribute cocaine base, cocaine, and heroin in violation of 21 U.S.C. §§ 841 and 846 (Count One); conspiracy to kill while engaged in a drug conspiracy in

violation of 21 U.S.C. §§ 846 and 848(e)(1)(A) (Count Fifty-One); intentionally killing or attempting to kill while involved in a drug trafficking conspiracy in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 846 and 848(e)(1)(A) (Count Fifty-Three); and using and carrying a firearm during and in relation to a drug conspiracy in violation of 18 U.S.C. § 924(c) (Count Sixty-Five). (ECF No. 1676). On February 16, 1998, a jury found him guilty of all four counts. (ECF No. 2195). He was sentenced to life imprisonment as to Counts 1, 51, and 53 to be served concurrently with each other, and 10 years imprisonment as to Count 65 to be served consecutively to Counts 1, 51, and 53. (ECF No. 2350). He was also sentenced to serve 5 years of supervised release as to Counts 1, 51, and 52, and 3 years of supervised release as to Count 65, to be served concurrently with each other. (*Id.*).

Since sentencing, Ortiz-Figueroa has filed numerous motions to reduce his sentence. (*See* ECF Nos. 3197, 3746, 3904, 4103). These have been denied. (*See* ECF Nos. 3347, 3788, 3985, 4171). In Ortiz-Figueroa's motion for compassionate release filed in 2019, he argued that he was entitled to release because he was remorseful of the events, was a model prisoner and engaged in educational programs, and diagnosed with HIV and stomach cancer. (ECF No. 3904). The Bureau of Prisons (BOP) denied the request because Ortiz-Figueroa lacked any diagnosis of a terminal diagnosis, a life expectancy of 18-months or less, or a condition with an end-of-life trajectory. (ECF No. 3904-1 at 1).

In his 2022 motion for compassionate release, Ortiz-Figueroa argued that, after exhausting his administrative remedies, he was entitled to compassionate release due to a change in circumstance. (ECF No. 4103 at 2). According to Ortiz-Figueroa, this change in circumstance as to his medical condition, age, time served, and rehabilitation efforts created extraordinary and compelling reasons warranting release. (*Id.* at 3). His medical condition included "Barrett's esophagus, Dysphagia, CDC-Asymptomatic High CD4 HIV, Type 2 diabetes mellitus, and Chronic disease of tonsils and adenoids, just to name a few." (*Id.* at 3-4). These conditions, he alleged, make him "more susceptible to death" from the coronavirus. (*Id.* at 4-6). He further argued that under § 3553(a) factors he was not a danger

to the community but rather was "remorseful and cognizant of the fact that he made mistakes a generation ago" and already served more than the national average for murder. (*Id.* at 6-7). Therefore, Ortiz-Figueroa argued he should be granted compassionate release and resentenced to time served, or alternatively be resentenced with "Special Conditions to include lifetime supervised release upon release, or any other relief this Court deems appropriate." (*Id.* at 9). Attached to his motion was documentation of his exhaustion of administrative remedies by evidence of an email exchange in March 2022 and a copy of his BOP Health Services Health Problems report generated November 20, 2020. (ECF No. 4103-1).

The Court denied the motion, holding that:

> While defendant alleges to the existence of extraordinary and compelling reason he supports his petition arguing that: (a) he is remorseful, (b) has been an exemplary prisoner for 21 years, and (c) has HIV and stomach cancer. He further alludes to death risks created by exposure to Covid-19. The record reflects defendant is 60 years of age, and there is no evidence reflecting that while under BOP custody he is exposed to risk of death due to Covid-19. The medical records while alluding to HIV, clearly reflect he is "Asymptomatic." No cancer diagnosis is corroborated by the record. The evidence on record dos not support the remedy requested, thus, the request is DENIED.

(ECF No. 4171).

Now before the Court is Ortiz-Figueroa's latest iteration of his request for compassionate release, filed in 2024. (ECF No. 4216). The motion is identical to the 2022 motion – albeit with a current signature date and additional exhibits. Ortiz-Figueroa now appends a proposed release plan and reduction in sentence application in which he proposes he stay with his daughter or brother upon release. (ECF No. 4216-1). Both are dated July 9, 2024. (*Id.*). There is no evidence (or claim) that the proposed release plan and reduction in sentence application were submitted to BOP prior to filing in District Court. Rather, he attached the same 2022 email exchange from his prior request to assert he has exhausted his administrative remedies. (ECF No. 4216-3). The medical documentation is current through 2024 and a copy of BOP Health Services Health Problems report generated in January 2024

has also been filed with the current motion. (ECF No. 4216-3; 4216-4). No notable changes suggesting terminal illness or an untreated serious condition were documented.

On July 24, 2024, the government opposed the 2024 motion, arguing that Ortiz-Figueroa has failed to establish any extraordinary or compelling circumstances warranting his release or any showing that he is no longer a danger to the community. (ECF No. 4218). Specifically, as to the extraordinary and compelling reasons, that the length of his sentence is neither extraordinary nor compelling, Ortiz-Figueroa does not "particularize" any undue harsh condition in his incarceration, and fails to provide any evidence his medical conditions are life-threatening or have an end-of-life trajectory. (*Id.* at 7-9). In fact, the government informed Ortiz-Figueroa has received the COVID-19 vaccine twice in 2021 and refused a third dosage in 2022. Moreover,

> the BOP current medical records obtained by the government show Defendant's HIV infection status is still asymptomatic, his dysphagia is on remission, his chronic disease of tonsils and adenoids is stable, his Barrett's esophagus condition (gastric ulcer without hemorrhage or perforation) is under control, and his type 2 diabetes mellitus condition is non-life threatening even though Defendant refuses to take medication for his diabetes and consumes large amounts of candy and sweets.

(*Id.* at 9). To sum up, the government argued the medical records appended to the 2024 motion show that Ortiz-Figueroa "is generally in good health despite these ailments." (*Id.*). There is no stomach cancer diagnosis. (*Id.*). As to Ortiz-Figueroa's danger to the community argument, the government observed that Ortiz-Figueroa failed to present any evidence as to how he is repentant and reformed. (*Id.* at 10). The government concluded that any argument in the alternative that Ortiz-Figueroa be granted home confinement is outside of Court's authority. (*Id.* at 11-13).

**STANDARD OF REVIEW**

Once a term of imprisonment has been imposed, there are few limited circumstances in which it may be modified. *United States v. Saccoccia*, 10 F. 4th 1, 3 (1st Cir. 2021). One such circumstance is the "statute carved" motion for compassionate release. *Id.* In 2018, the First Step Act amended 18 U.S.C. § 3582(c)(1)(A)(i) to allow incarcerated defendants to file a motion for compassionate release.

*United States v. Texeira-Nieves*, 23 F.4th 48, 52-53 (1st Cir. 2022).

To present such a motion, the petitioner must have first "fully exhausted all administrative rights." 18 U.S.C. § 3582(c)(1)(A). Next, the First Step Act allows a court to modify a petitioner's term of imprisonment if the petitioner is able to show that: (1) extraordinary and compelling reasons exist, (2) the sentence reduction is consistent with USSG § 1B1.13, and (3) the § 3553(a) factors favor release. *United States v. D'Angelo*, 110 F.4th 42, 48 (1st Cir. 2024); 18 U.S.C. § 3582(c)(1)(A)(i). In lieu of extraordinary or compelling reasons, a petitioner may show that their term of imprisonment should be modified if they are at least 70 years of age, served at least 30 years of their sentence, and BOP has found that they are not a danger to the community. 18 U.S.C. § 3582(c)(1)(A)(ii). "A district court may grant a compassionate release motion only if it finds that the movant satisfies each step." *D'Angelo*, 110 F.4th at 48 (citations omitted). Conversely, the court "must deny the motion if that movant fails at any step." *Id.* The court conducts "a holistic review to determine whether the individualized circumstances, taken in the aggregate, present an 'extraordinary and compelling' reason to grant compassionate release." *United States v. Vega-Figueroa*, 139 F.4th 77, 80-81 (1st Cir. 2025) (quoting *United States v. Trenkler*, 47 F.4th 42, 47 (1st Cir. 2022)). However, the court is not required to provide an "exhaustive explanation" of every factor in its analysis. *Id.* at 82 (citing *United States v. Quirós-Morales*, 83 F.4th 79, 83 (1st Cir. 2023) ("[D]istrict court[s] need not consider every potential configuration of grounds for compassionate release but, rather, [their] analysis 'should be shaped by the arguments advanced by defendants.'") (quoting *United States v. Gonzalez*, 68 F.4th 699, 706 (1st Cir. 2023)))). And "even if a defendant shows that there are extraordinary and compelling circumstances warranting a reduced sentence, that motion may still be denied solely on the basis of the district court's supportable determination that the § 3553(a) factors weight against the granting of such relief." *D'Angelo*, 110 F.4th at 49 (cleaned up).

The burden is on the petitioner to establish that a sentence reduction is warranted. *United States*

*v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021) (movant bears the burden of establishing extraordinary and compelling reasons); *United States v. Hodges*, 2025 U.S. Dist. LEXIS 123405, *20-21; 2025 WL 1796098, *8 (D. Me. June 30, 2025) ("The First Circuit has made clear that a movant for compassionate release bears the burden of establishing extraordinary and compelling reasons support her requested relief."). While the statute does not define extraordinary and compelling reasons, courts look to the U.S. Sentencing Commission's policy statements. *Vega-Figueroa*, 139 F.4th at 81 ("To grant relief, the court must find that 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission'") (quoting 18 U.S.C. § 3582(c)(1)(A)). Under USSG § 1B1.13(b) there are six numerated extraordinary and compelling reasons: (1) medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) victim of abuse; (5) other reasons that are "similar in gravity" to reasons 1-4; and (6) unusually long sentence.

Extraordinary and compelling reasons due to medial circumstances under USSG § 1B1.13(b)(1) may exist when the petitioner has a "terminal illness," "is suffering from a serious physical or mental condition," or is "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13(b)(1)(A)-(B). In addition, medical circumstances warranting compassionate relief include when the defendant requires "specialized medical care that is not being provided […]." § 1B1.13(b)(1)(C). However, "Courts generally view compassionate release due solely to a medical condition as an extraordinary and rare event granted only in cases of notable severity." *United States v. Rivera-Vazquez*, 2024 U.S. Dist. LEXIS 196663, *9; 2024 WL 4601338, *4 (D.P.R. Oct. 29, 2024).

Under USSG § 1B1.13(b)(2), age constitutes an extraordinary and compelling reason when the individual is "(A) [] at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her

term of imprisonment, whichever is less." And under USSG § 1B1.13(b)(6), an unusually long sentence may be considered extraordinary and compelling if (1) the petitioner has served at least ten years of his sentence and (2) a change in the law "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances."

Rehabilitation pursuant to 28 U.S.C. § 994(t) is not considered an extraordinary and compelling reason alone, but "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." USSG § 1B1.13(d); *United States v. Gonzalez*, 68 F.4th 699, 704 (1st Cir. 2023) ("a district court 'may consider any complex of circumstances raised by a defendant as forming an extraordinary and compelling reason warranting relief' with the exception of rehabilitation alone, since Congress explicitly mandated that such a rationale 'shall not be considered an extraordinary and compelling reason'") (quoting *United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2023) (cleaned up)); *United States v. Vazquez-Figueroa*, 2025 U.S. Dist. LEXIS 151599 at * 13; 2025 WL 2212131, at *5 (D.P.R. Aug. 5, 2025) ("rehabilitation efforts and good conduct in prison cannot by themselves satisfy the extraordinary and compelling reasons standard").

## DISCUSSION

Ortiz-Figueroa has failed to show compassionate release is warranted under 18 U.S.C. § 3582(c)(1)(A). At the outset, it appears Ortiz-Figueroa did not exhaust his administrative remedies, but the government waived this point. Nevertheless, considering the Court already denied an identical motion in all but for the date of filing, the law of the case doctrine governs the outcome here. Ortiz-Figueroa has not provided any justification as to why the Court should reconsider its previous decision without any showing of change in circumstance as to extraordinary compelling reasons, medical circumstances, age threshold, rehabilitation, or danger to the community. Therefore, as explained

below, I recommend the motion be **DENIED**.

## I. Exhaustion of Administrative Remedies

The Court looks first to whether the defendant has exhausted his administrative remedies. To exhaust administrative remedies one of two things must happen after the petitioner submits an application to BOP: either BOP responds to the request within 30 days or BOP fails to respond within 30 days. If the petitioner receives a denial within the 30-day window he must appeal and follow the internal procedures within BOP in order to have exhausted his administrative remedies. *See United States v. Nieves*, 615 F.Supp. 3d 73, 75-76 (D.P.R. 2022) (explaining the Administrative Remedy Procedure) (citing 28 C.F.R. § 542.13-.15). If the petitioner does not receive any response within 30-days then he has exhausted his administrative remedies and may proceed to file the motion in district court. 18 U.S.C. § 3582(c)(1)(A). The administrative exhaustion requirement is "a non-jurisdictional claim-processing rule" and therefore is mandatory unless waived or conceded by the government. *Texeira-Nieves*, 23 F.4th at 53 ("The administrative exhaustion requirement in § 3582(c)(1)(A) neither 'speaks in jurisdictional terms' nor 'refers in any way to the court's jurisdiction'") (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)) (cleaned up); *United States v. Vazquez-Figueroa*, 2025 U.S. Dist. LEXIS 151599 *11; 2025 WL 2212131 *4 (D.P.R. Aug. 5, 2025) ("The exhaustion requirement is not a jurisdictional bar; rather it is a nonjurisdictional claim-processing rule" and "the government can waive it 'either expressly or by failing to raise it as a defense'") (cleaned up).

Ortiz-Figueroa failed to exhaust his administrative remedies. He filed the current motion on July 16, 2024. (ECF No. 4216). Attached to his motion was his request for compassionate release to BOP in March 2022. (ECF No. 4216-3 at 2-3). He admits that the attached request for compassionate release to the BOP was filed March 18, 2022. (ECF No. 4216 at 3) ("Defendant submitted his request for Compassionate Release to Warden S. Salem on or about March 18, 2022, with Trulincs email sent as a backup due to volume requests"). Notably, this was the same request he provided in his 2022

compassionate release motion. (*Compare* ECF No. 4103-1 at 2-3 *with* ECF No. 4216-3 at 2-3). A defendant must exhaust administrative remedies prior to each request for compassionate release. *United States v. Ayala-Vázquez*, 784 F. Supp. 3d 500, 505-06 (D.P.R. 2025) ("the law is clear that 'successive compassionate release motions must independently satisfy the exhaustion requirement'") (quoting *United States v. Cain*, 2021 U.S. Dist. LEXIS 20672 at *10-11, 2021 WL 388436 at *4 (D. Me. 2021)). And while Ortiz-Figueroa also attaches a reduction in sentence application dated July 9, 2024, he provides no evidence or argument that the application was submitted to his BOP warden. (ECF No. 4216-1 at 5).

In any case, the government did not raise failure to administratively exhaust as a defense. In fact, the government did not address administrative exhaustion at all in its opposition. The administrative exhaustion requirement has therefore been waived, and the Court moves on to the next step of the analysis.

## II. Law of the Case Doctrine

The law of the case doctrine controls here. Ortiz-Figueroa does not provide any explanation as to how his circumstances have changed since the Court found that there were no extraordinary and compelling reasons that warranted his release in 2022. The motion for compassionate release presently before this Court is identical to the previously denied motion and Ortiz-Figueroa fails to articulate let alone distinguish why compassionate relief is warranted now when it was already denied on the same based on the same set of circumstances. Rather, he relies solely on the addition of a proposed release plan, unsigned reduction in sentence form, and updated medical documentation. But these additions fail to prove that Ortiz-Figueroa's medical circumstances, age, the no longer "novel" COVID-19 pandemic, service of time, and rehabilitation (alone or in tandem) warrant his compassionate release.

"Under the law of the case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Diaz-Nieves v. United*

*States*, 128 F. Supp. 3d 449, 454 (D.P.R. 2015) (cleaned up). Law of the case doctrine has two branches. *United States v. Wallace*, 573 F.3d 82, 88 (1st Cir. 2009). The first branch, also known as the mandate rule "prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case." *United States v. Moran*, 393 F.3d 1, 7 (1st Cir. 2004). "The second branch contemplates that a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court." *Id.* To reconsider issues that were previously litigated in the case requires "strong justification." *Ellis v. United States*, 313 F.3d 636, 647 (1st Cir. 2002).

The second branch of law of the case doctrine applies here. And it has been applied in the compassionate release context throughout the nation. *See United States v. Badini*, 2023 U.S. App. LEXIS 196, *3 n.3, 2023 WL 110529, *1 n.3 (3d Cir. Jan. 5, 2023) (finding that the district court "did not err in declining to" reexamine "grounds [that] did not justify compassionate release"); *United States v. Fredrickson*, 2023 U.S. App. LEXIS 27603, *6-7, 2023 WL 6859761, *2 (7th Cir. Oct. 18, 2023) ("[the defendant's] forfeiture does not mean that the district court abused its discretion by declining to address issues [the defendant] had put before the court previously, when circumstances had not changed"); *United States v. Clark,* 2022 U.S. App. LEXIS 5929, *4-5, 2022 WL 669442, *2 (11th Cir. Mar, 7, 2022) (holding that law of the case doctrine applies in compassionate release when the defendant "has not presented new and substantially different evidence, identified a change in the controlling authority, or shown that the previous decision was clearly erroneous"); *United States v. Broadfield*, 2022 U.S. App. LEXIS 25084, *1-2, 2022 WL 4092401, *1 (7th Cir. Sep. 7, 2022) (holding that the court's earlier decision was "law of the case, and no intervening developments call it into question"); *United States v. DeSilva*, 2025 U.S. Dist. LEXIS 67061, *5-6, 2025 WL 1047701, *2 (C.D. Ill. Apr. 8, 2025) (applying law of the case doctrine to compassionate release when the defendant presented "nothing in his latest motion that he did not already present, or could have presented, as it

relates to changes in law in his previous motion"). While cognizant that health conditions are not necessarily static, making the doctrine inapplicable in certain cases, here, the motions are identical on everything but the filing date, and the updated health assessments confirm the same medical conditions remain stable and under control. Thus, there is no reason to deviate from the doctrine's straight-forward application. Ortiz-Figueroa has failed to provide any "strong justification" as to why the court should reconsider an identical motion for compassionate release that was previously denied and went unappealed. Regardless, for the same reasons as before, he has failed to show any extraordinary circumstances.

The updated medical documentation fails to describe any change in circumstance suggesting that he has a "terminal illness," "is suffering from a serious physical or mental condition," or is "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13(b)(1)(A)-(B). And while Ortiz-Figueroa meets the age requirement of USSG § 1B1.13(b)(2) of being at least 65 years of age and has served at least 10 years of his sentence, he does not argue that he is "experiencing a serious deterioration in physical or mental health because of the aging process." USSG § 1B1.13(b)(2). And he does not meet the age or time served requirements of 18 U.S.C. § 3582(c)(1)(A)(ii). Moreover, any argument that Ortiz-Figueroa received an unusually long sentence under USSG § 1B1.13(b)(6) fails. While Ortiz-Figueroa has served more than 10 years of his sentence, he fails to point to any change in the law that would produce a gross disparity in sentencing – or that any such disparity exists.

This also remains true for Ortiz-Figueroa's arguments as to rehabilitation. Under USSG § 1B1.13(d), "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." While rehabilitation "may be considered in combination with other circumstances," as discussed previously, Ortiz-Figueroa fails to provide any support to the claim

that these other circumstances do in fact exist. *Id.* Therefore, because there is nothing to show that he is suffering from an applicable medical circumstance or that the aging process has caused serious deterioration in his physical or mental condition, Ortiz-Figueroa has failed to establish any extraordinary and compelling circumstances that could be considered with any rehabilitation.

As to the § 3553(a) factors, this Court has previously held, on the same facts that compassionate release is not warranted in this case and Ortiz-Figueroa has not provided any evidentiary support to the claim that he is no longer a danger to the community. Because even if the Court were to assume that extraordinary and compelling circumstances exist under § 1B1.13, there is nothing to evidence that the § 3553(a) factors are in his favor. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (stating that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *United States v. Nichnianidze*, 342 F.3d 6, 18 (1st Cir. 2003) (holding that the *pro se* appellant had waived his argument because it was not developed). Because he bears the burden of proving entitlement to relief, even if Ortiz-Figueroa could show an extraordinary and compelling circumstance, his motion should still be denied for failure to meet this showing. *See D'Angelo*, 110 F.4th at 48 (the court "must deny the motion if that movant fails at any step").

Finally, as correctly noted by the government, the Court lacks any authority to modify a defendant's sentence to home confinement. Only the BOP may order a defendant to serve their sentence in home confinement. *Texeira-Nieves*, 23 F.4th at 59 ("the absence of any reference to modifying a defendant's location of confinement denotes that section 3582(c)(1)(A) does not afford a district court the authority to order a defendant to serve his unmodified sentence at home"); *Tapia v. United States*, 564 U.S. 319, 330-31 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over 'the place of the prisoner's imprisonment' . . . [D]ecisionmaking authority rests with the BOP").

## CONCLUSION

For the foregoing reasons, I recommend Ortiz-Figueroa's renewed motion for compassionate release be **DENIED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to it must be specific and must be filed with the Clerk of Court within fourteen days from the date it is filed. Failure to file timely and specific objections to the Report and Recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30-31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico this October 20, 2026.

*s/ Mariana E. Bauzá-Almonte*
MARIANA E. BAUZÁ-ALMONTE
United States Magistrate Judge